Donald H. MONTGOMERY, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF MOTOR VEHICLES and Commissioner Edward Powell, Defendants.

No. C–C–77–122.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Aug. 4, 1978.

William H. Elam, Charlotte, N. C., for plaintiff.

Jean A. Benoy, Deputy Atty. Gen., Raleigh, N. C., for defendants.

## JUDGMENT

McMILLAN, District Judge.

On May 6, 1977, the plaintiff filed this action claiming that the procedures adopted by N.C.G.S. § 20–16.2(a) and the procedures which led to the revocation of his driving privileges for six months are an unconstitutional deprivation of a property right without due process of law and a denial of equal protection of the laws. He sought a preliminary and permanent injunction against the enforcement of the judgment revoking his license and a declaratory judgment that the statute on its face and as applied in his case is unconstitutional. On June 14, 1977, an order was filed denying the motion for a preliminary injunction. By this judgment the plaintiff is denied all relief sought.

N.C.G.S. § 20–16.2 provides:

"§ 20–16.2. Mandatory revocation of license in event of refusal to submit to chemical tests.—(a) Any person who drives or operates a motor vehicle upon any highway or any public vehicular area shall be deemed to have given consent, subject to the provisions of G.S. 20–139.1, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person

was driving or operating a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle on a highway or public vehicular area while under the influence of intoxicating liquor. The law-enforcement officer shall designate which of the aforesaid tests shall be administered. The person arrested shall forthwith be taken before a person authorized to administer a chemical test and this person shall inform the person arrested both verbally and in writing and shall furnish the person a signed document setting out:

"(1) That he has a right to refuse to take the test;

"(2) That refusal to take the test will result in revocation of his driving privilege for six months;

"(3) That he may have a physician, qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of the law-enforcement officer; and

"(4) That he has the right to call an attorney and select a witness to view for him the testing procedures; but that the test shall not be delayed for this purpose for a period in excess of 30 minutes from the time he is notified of his rights.

"(b) Any person who is unconscious or who is otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this section and the test or tests may be administered, subject to the provisions of G.S. 20–139.1.

"(c) The arresting officer, in the presence of the person authorized to administer a chemical test, shall request that the person arrested submit to a test described in subsection (a). If the person arrested willfully refuses to submit to the chemical test designated by the arresting officer, none shall be given. However, upon the receipt of a sworn report of the arresting officer and the person authorized to administer a chemical test that the person arrested, after being advised of his rights as set forth in subsection (a), willfully refused to submit to the test upon the request of the officer, the Division shall revoke the driving privilege of the person arrested for a period of six months.

"(d) Upon receipt of the sworn report required by G.S. 20–16.2(c) the Division shall immediately notify the arrested person that his license to drive is revoked immediately unless said person requests in writing within three days of receipt of notice of revocation a hearing. If at least three days prior to hearing, the licensee shall so request of the hearing officer, the hearing officer shall subpoena the arresting officer and any other witnesses requested by the licensee to personally appear and give testimony at the hearing. If such person requests in writing a hearing, he shall retain his license until after the hearing. The hearing shall be conducted in the county where the arrest was made under the same conditions as hearings are conducted under the provisions of G.S. 20–16(d) except that the scope of such hearing for the purpose of this section shall cover the issues of whether the law-enforcement officer had reasonable grounds to believe the person had been driving or operating a motor vehicle upon a highway or public vehicular area while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he willfully refused to submit to the test upon the request of the officer. Whether the person was informed of his rights under the provision of G.S. 20–16.2(a)(1), (2), (3), (4) shall be an issue. The Division shall order that the revocation either be rescinded or sustained. If the revocation is sustained, the person shall surrender his license immediately upon notification.

"(e) If the revocation is sustained after such a hearing, the person whose driving privilege has been revoked, under the

provisions of this section, shall have the right to file a petition in the superior court for a hearing de novo to review the action of the Division in the same manner and under the same conditions as is provided in G.S. 20–25.   .   .   ."

By a stipulation filed August 24, 1977, the parties have agreed that the following facts are true:

On September 13, 1975, the plaintiff was arrested for driving under the influence of alcohol in Union County, North Carolina. After being advised of his rights and the results of a refusal as required by N.C.G.S. § 20–16.2(a), the plaintiff was requested to submit to a breathalyzer examination. The plaintiff refused. On November 10, 1975, the North Carolina Department of Motor Vehicles issued a notice that the plaintiff's driver's license was revoked for six months beginning November 20, 1975. The plaintiff within three days of receipt of the notice requested a hearing in writing. Under subsection (d) of § 20–16.2, this request automatically stayed the revocation. The revocation was sustained by a hearing officer of the North Carolina Department of Motor Vehicles. On December 5, 1975, the plaintiff filed a petition for stay of the revocation and for hearing de novo in Mecklenburg County Superior Court to determine whether his license was properly revoked. On December 9, 1975, an order of the Superior Court stayed enforcement of the license revocation notice and set the case for de novo hearing. That hearing was conducted on January 26, 1976. The trial judge, pursuant to a judgment filed January 29, 1976, found among other things that the arresting officer had reasonable grounds to arrest the plaintiff for operating a motor vehicle while under the influence of intoxicating liquor, and he affirmed the revocation. The plaintiff sought review of the decision by the North Carolina Court of Appeals and the North Carolina Supreme Court. On December 15, 1976, the Court of Appeals filed a decision affirming the Superior Court, and the Supreme Court dismissed the appeal and denied the petition for discretionary review on April 8, 1977. On April 26, 1977, another notice of revoca-

tion of driving privileges was issued by the Department of Motor Vehicles. That notice called for revocation of the privileges for six months, beginning on May 6, 1977, the day that this action was filed.

█ Plaintiff's claim that his license was revoked without procedural due process is rejected. All the evidence is that, although a notice of revocation was issued prior to a hearing, the plaintiff was provided a right to a hearing, before revocation was effectuated. In fact the plaintiff requested and received an administrative hearing, a trial de novo in Superior Court, and consideration of his appeals of the Superior Court's decision by both the North Carolina Court of Appeals and the North Carolina Supreme Court prior to actual revocation. Clearly this plaintiff was not deprived of any property right without procedural due process.

█ N.C.G.S. § 20–16.2(d) provides an adequate opportunity for a hearing prior to revocation of a license for failure to submit to a breathalyzer examination:

"(d)  .   .   .   the Division shall immediately notify the arrested person that his license to drive is revoked immediately unless said person requests in writing within three days of receipt of notice of revocation a hearing." (Emphasis added.)

Such a hearing satisfies the constitutional due process requirement. This is unlike other statutes, invalidated because they did not comply with the due process clause of the Fourteenth Amendment, in that those statutes permitted automatic license revocation prior to an opportunity for a hearing. Chavez v. Campbell, 397 F.Supp. 1285 (D.Ariz.1975); Slone v. Kentucky Dept. of Transportation, 379 F.Supp. 652 (E.D.Ky. 1974), aff'd. on other grounds, 513 F.2d 1189 (6th Cir. 1975).

In the alternative the plaintiff claims that the revocation violates the equal protection clause of the Fourteenth Amendment. In support the plaintiff quotes Chavez v. Campbell, supra :

"It cannot be denied that there is a compelling State interest to protect the pub-

lic from drunk drivers. However, the effect of the implied consent law is not to remove drunks from the road, but rather to remove only those who have refused to submit to the test. Thus, a drunk who takes the breath test continues to drive and keeps his license, while a driver who may be completely sober, and who refuses to take the test finds himself excluded from the highways. As a result, the statute does not further any compelling State interest to remove drunks from the road. The vitality of the defendant's argument is further vitiated by the stipulated record which shows that, as a practical matter, the Drivers' License Branch of the Motor Vehicle Division of the Arizona Highway Department does not ordinarily suspend an individual's Arizona driver's license upon receipt of a first conviction for DWI although it has the discretion of doing so under A.R.S. § 28–446(A)(8)," at 1288.

The final sentences of that opinion, however, state the holding:

"As we have reached our decision on due process grounds, *we do not consider plaintiff's equal protection and right to counsel* arguments. Injunction will issue." (Emphasis added.) At 1288.

■ An examination of this claim that the statute distinguishes among people in violation of the equal protection clause requires a comparison of the property right lost, the nature of the classification, and the state's justification for the classification.

It seems clear that

"Although a driver's license is an important property right in this age of the automobile, it does not follow that the right to drive is fundamental in the constitutional sense." *Wells v. Malloy*, 402 F.Supp. 856, 858 (D.Vt.1975).

Revocation of the plaintiff's driver's license did not deprive him of any fundamental constitutional right.

■ Nor does the statutory classification involve the waiver or deprivation of a constitutional right. The statutory distinction is based on whether a motorist refuses to submit to a breath test. Since the motorist

may not be subjected to such a test unless "the law enforcement officer [has] reasonable grounds to believe the person had been driving or operating a motor vehicle upon a highway or public vehicular area while under the influence of intoxicating liquor," N.C.G.S. § 20–16.2(d), the State could have required that the motorist submit to the test without any refusal option and without any infringement of the constitutional rights against self-incrimination or against unreasonable searches and seizures. (In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that, where there was probable cause for the officer to arrest petitioner for driving under the influence of intoxicating liquor, compelling the driver defendant to provide blood samples to prove the percent of alcohol in his blood did not violate either his constitutional right against self-incrimination or his constitutional right against unreasonable searches and seizures. The breath test sought by North Carolina law enforcement officials is clearly a less objectional intrusion than the compulsory blood samples allowed under *Schmerber*.)

Although, as the *Chavez* court said, the ultimate effect of the breathalyzer statute may be the removal of some drunk drivers from the highways, the North Carolina courts have noted that the *administrative punishment of license revocation is designed to promote breathalyzer examinations which provide the state law enforcement officers with more accurate evidence of possible driving under the influence violations. Joyner v. Garrett*, 279 N.C. 226, 229, 182 S.E.2d 553 (1971). The evidence sought is directly related to the state's need to enforce the laws governing the operation of motor vehicles on the state's roads. The administrative penalty is appropriately designed to deny a right directly related to the laws whose enforcement may be hindered by refusal to take a breathalyzer examination. The statute only "coerces" such a test in the limited instances in which the law enforcement officer has reasonable grounds to believe that the driver has vio-

lated the law. In such situations the state could under *Schmerber v. California, supra,* constitutionally *require* that the driver submit to an examination without any option to refuse.

Certainly it is not impermissible for the state to allow drivers an option of refusing a breathalyzer examination that could be constitutionally required in exchange for risking license suspension of six months if the proper procedures are followed and the officer has probable cause to believe that the accused has driven a motor vehicle while under the influence of intoxicating liquor. The plaintiff was not denied equal protection of the laws by this statutory classification.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that all of the plaintiff's claims are denied, and that this case is dismissed with costs to be taxed to the plaintiff.