RICHARD JAMES LEE, PETITIONER-APPELLANT v. WILLIAM C. GORE, JR., AS COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES, NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, RESPONDENT-APPELLEE

No. COA09-370

(Filed 19 January 2010)

**Motor Vehicles— revocation of driving privileges—properly executed affidavit required—willful refusal of chemical analysis**

The trial court erred by upholding the Division of Motor Vehicles (DMV) revocation of petitioner's North Carolina driving privileges because N.C.G.S. § 20-16.2 requires that the (DMV) receive a properly executed affidavit that includes all the requirements set forth in N.C.G.S. § 20-16.2(c1) before the (DMV) is vested with the authority to revoke a driver's license. A form DHHS 3908 cannot serve as a substitute for a properly executed affidavit indicating petitioner willfully refused a chemical analysis.

Appeal by Petitioner from order entered 22 October 2008 by Judge Henry E. Frye, Jr. in Superior Court, Wilkes County. Heard in the Court of Appeals 27 October 2009.

*Richard J. Lee, J.D., LL.M., Petitioner-Appellant, pro se.*

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for Respondent-Appellee.*

McGEE, Judge.

Petitioner, a resident and registered driver of the State of Florida, was driving through Wilkes County just before midnight on 22 August 2007, when he was stopped by Officer Jason Ratliff of the Wilkesboro Police Department. Officer Ratliff testified at a later review hearing before the Division of Motor Vehicles (the Division) that he believed probable cause existed to arrest Petitioner for driving while impaired. Officer Ratliff transported Petitioner to an intake center to administer a chemical analysis (by an Intoxilyzer alcohol analyzer) to determine the concentration of alcohol in Petitioner's body. Officer Ratliff testified that Petitioner never specifically refused to submit to the chemical analysis. Officer Ratliff told Petitioner several times that failure to take the chemical analysis would result in Petitioner's being marked as willfully refusing the chemical analysis, and would result in the revocation of Petitioner's North Carolina driving privileges. However, Petitioner did not agree to take the Intoxilyzer test and Officer Ratliff marked "refused" on a form DHHS 3908 at 12:47 a.m. on 23 August 2007.

Officer Ratliff testified he then went to a magistrate to execute an affidavit concerning Petitioner's refusal to submit to a chemical analysis. Form DHHS 3907, titled "Affidavit and Revocation Report," was created by the Administrative Office of the Courts for this purpose. Form DHHS 3907 includes fourteen sections with an empty box before each section. The person swearing to the accuracy of the affidavit, having been "first duly sworn," checks the boxes relevant to the circumstances, and then signs the affidavit in front of an official authorized to administer oaths and execute affidavits. Section fourteen of form DHHS 3907 states: "The driver willfully refused to submit to a chemical analysis as indicated on the attached [form] ☐ DHHS 3908, ☐ DHHS 4003." Officer Ratliff testified that he did not check the box for section fourteen and the affidavit he sent to the Division did not have the box for section fourteen checked. Therefore, the "Affidavit and Revocation Report" sent to the Division

**LEE v. GORE**

[202 N.C. App. 133 (2010)]

did not state that Petitioner had willfully refused to submit to a chemical analysis.

Upon receipt of the form DHHS 3907 sent by Officer Ratliff, the Division revoked Petitioner's North Carolina driving privileges. Petitioner requested a review hearing to contest the revocation, and a hearing was conducted on 20 November 2007 before Administrative Hearing Officer P.M. Snow. At this hearing, it was discovered that the copy of form DHHS 3907 received by the Division had an "x" in the section fourteen box. All the other boxes marked on the form DHHS 3907 contained check marks, not "x's." Petitioner's copy of the form DHHS 3907 did not contain the "x" in the box preceding section fourteen.

Hearing Officer Snow decided that the revocation of Petitioner's North Carolina driving privileges was proper. Petitioner then appealed the decision of Hearing Officer Snow to Wilkes County Superior Court, which affirmed the decision of Hearing Officer Snow. Petitioner appeals.

In Petitioner's second argument, he contends the trial court erred in upholding the Division's revocation of Petitioner's North Carolina driving privileges because the Division was without authority to revoke Petitioner's driving privileges. We agree.

N.C. Gen. Stat. § 20-1 (2006)[1] states: "The Division of Motor Vehicles of the Department of Transportation is established. This Chapter sets out the powers and duties of the Division." Therefore, we must look to N.C. Gen. Stat. § 20-1 *et seq.* for the full scope of the duties and powers conferred upon the Division by the General Assembly. N.C. Gen. Stat. § 20-16.2 is the statute delineating the powers of the Division when a person has been charged with an implied-consent ⊕ offense, and that person refuses to submit to a chemical analysis.

(c) Request to Submit to Chemical Analysis.—A law enforcement officer or chemical analyst shall designate the type of test or tests to be given and may request the person charged to submit to the type of chemical analysis designated. If the person charged willfully refuses to submit to that chemical analysis,

---

1. The events related to this appeal occurred before the effective date of the current version of N.C. Gen. Stat. § 20-16.2. Though we cite the version of the statute in effect on 23 August 2007, for the purposes of this appeal, there are no material differences between the current version of this statute, and the version in effect on 23 August 2007.

none may be given under the provisions of this section, but the refusal does not preclude testing under other applicable procedures of law.

(c1) Procedure for Reporting Results and Refusal to Division.— Whenever a person refuses to submit to a chemical analysis . . . the law enforcement officer and the chemical analyst *shall* without unnecessary delay *go before an official authorized to administer oaths and execute an affidavit(s) stating that*:

. . . .

(5) The . . . person willfully refused to submit to a chemical analysis.

The officer shall immediately mail the affidavit(s) to the Division. If the officer is also the chemical analyst who has notified the person of the rights under subsection (a), the officer may perform alone the duties of this subsection.

(d) Consequences of Refusal; Right to Hearing before Division; Issues.—*Upon receipt of a properly executed affidavit required by subsection (c1)*, the Division shall expeditiously notify the person charged that the person's license to drive is revoked for 12 months, effective on the tenth calendar day after the mailing of the revocation order unless, before the effective date of the order, the person requests in writing a hearing before the Division.

. . . .

(e) Right to Hearing in Superior Court.—If the revocation for a willful refusal is sustained after the hearing, the person whose license has been revoked has the right to file a petition in the superior court for a hearing on the record. The superior court review shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license.

N.C. Gen. Stat. § 20-16.2 (2006).

In the 20 November 2007 hearing conducted pursuant to N.C. Gen. Stat. § 20-16.2(d), Hearing Officer Snow concluded in the "Findings of Fact, Conclusions of Law and Decision" that any failure by Officer Ratliff to check the box for section fourteen on the affi-

LEE v. GORE

[202 N.C. App. 133 (2010)]

davit could not have prejudiced Petitioner, and did not deprive the Division of the authority to revoke Petitioner's license. Hearing Officer Snow concluded, as a matter of law, that Petitioner willfully refused to submit to a chemical analysis and that "the Order of Revocation of the driving privilege of [Petitioner] is sustained."

Petitioner appealed pursuant to N.C. Gen. Stat. § 20-16.2(e) to Wilkes County Superior Court. The trial court affirmed the 20 November 2007 decision of the Division by order entered 22 October 2008.

However, the uncontroverted testimony of Officer Ratliff before Hearing Officer Snow was that Officer Ratliff never marked any box associated with section fourteen on the affidavit before he made his affirmation to the magistrate and executed the affidavit. Officer Ratliff was asked at the hearing: "you never went back and told the magistrate or gave anybody authority to change that affidavit [to check the box associated with section fourteen]." Officer Ratliff responded, "no, sir." Officer Ratliff also agreed that "the copy [of the affidavit that was] with the Division . . . [was] not the same [one] that [Officer Ratliff] swore to in front of the magistrate."

When construing N.C. Gen. Stat. § 20-16.2, our Court has stated:

"The intent of the legislature controls the interpretation of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."

*Nicholson v. Killens*, 116 N.C. App. 473, 477, 448 S.E.2d 542, 544 (1994), quoting *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (citations omitted). " 'Statutes imposing a penalty are to be strictly construed.' " *Killens*, 116 N.C. App. at 477, 448 S.E.2d at 544, quoting *Carter v. Wilson Construction Co.*, 83 N.C. App. 61, 68, 348 S.E.2d 830, 834 (1986).

"Whenever a person refuses to submit to a chemical analysis . . . the law enforcement officer and the chemical analyst *shall* without unnecessary delay *go before an official authorized to administer oaths and execute an affidavit*(s) stating that: . . . (5) The . . . person willfully refused to submit to a chemical analysis." N.C. Gen. Stat. § 20-16.2(c1) (emphasis added). "The officer shall immediately mail the affidavit(s) to the Division." *Id. "Upon receipt of a properly exe-*

*cuted affidavit required by subsection (c1),* the Division shall expeditiously notify the person charged that the person's license to drive is revoked for 12 months[.]" N.C. Gen. Stat. § 20-16.2(d) (emphasis added).

Construing N.C. Gen. Stat. § 20-16.2 strictly, as we are compelled to do, *Killens,* 116 N.C. App. at 477, 448 S.E.2d at 544, we hold that the plain language of the statute requires that the Division receive a "properly executed affidavit" that includes all the requirements set forth in N.C. Gen. Stat. § 20-16.2(c1) before the Division is vested with the authority to revoke a driver's license pursuant to N.C. Gen. Stat. § 20-16.2.

"The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms." *Domestic Electric Service, Inc. v. Rocky Mt.,* 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974) (citation omitted). If we were to hold that the Division had the authority to revoke Petitioner's license without first obtaining an affidavit including a sworn statement of willful refusal as stated in N.C. Gen. Stat. § 20-16.2(c1), we would be rendering that language meaningless, as mere surplusage.

We are not convinced by the argument of Respondent that, because the form DHHS 3908 was sent to the Division along with the affidavit, and the form DHHS 3908 was marked "refused," the requirement that the sworn affidavit include an affirmative statement of Petitioner's willful refusal was satisfied. Although form DHHS 3907 includes boxes to check indicating that either form DHHS 3908 or form DHHS 4003 is attached, nowhere in N.C. Gen. Stat. § 20-16.2 is it required that a form DHHS 3908 (or a form DHHS 4003) be attached to the affidavit mandated under N.C. Gen. Stat. § 20-16.2(c1). We hold that a form DHHS 3908 is not a substitute for a "properly executed affidavit" as required by N.C. Gen. Stat. § 20-16.2(c1).

N.C. Gen. Stat. § 20-16.2 did require, however, that Officer Ratliff complete an affidavit indicating that Petitioner had wilfully refused the chemical analysis, and that Officer Ratliff, before an "official authorized to administer oaths and execute [affidavits]," swear under oath to the truth of the information included in the affidavit. Officer Ratliff quite admirably and honestly informed Hearing Officer Snow that Officer Ratliff failed to check the box indicating Petitioner had willfully refused to submit to the chemical analysis before he executed the affidavit in front of the magistrate. Therefore, the requirements of N.C. Gen. Stat. § 20-16.2(c1) were not met.

**LEE v. GORE**

[202 N.C. App. 133 (2010)]

We note that there was no evidence presented at the hearing indicating Officer Ratliff ever showed the magistrate the form DHHS 3908, nor even that Officer Ratliff brought the form with him when he went to execute the affidavit. Therefore, even assuming *arguendo* the form DHHS 3908 could be considered a part of the affidavit, which construing the plain language of N.C. Gen. Stat. § 20-16.2 we hold it cannot, there was no evidence the magistrate had any knowledge of the form DHHS 3908, or of it having been marked as "refused," at the time the affidavit was executed. Therefore, there is no evidence that Officer Ratliff swore before the magistrate in any manner that Petitioner had willfully refused to submit to the chemical analysis. The form DHHS 3908 cannot serve as a substitute for a properly executed affidavit.

We hold that the Division never received "a properly executed affidavit required by subsection (c1)" and, therefore, the Division had no authority to revoke Petitioner's license pursuant to N.C. Gen. Stat. § 20-16.2, or any other statute. Absent the authority to revoke Petitioner's license, there was also no authority pursuant to N.C. Gen. Stat. § 20-16.2 for the Division to conduct a review hearing, or for appellate review in the superior court.

Therefore, the rulings of Hearing Officer Snow and the superior court affirming the revocation of Petitioner's license are void. We vacate the order of the superior court affirming the decision of Hearing Officer Snow, and remand to the Division for reinstatement of Petitioner's North Carolina driving privileges. In light of this holding, we do not address Petitioner's additional arguments.

Vacated and remanded.

Judges WYNN and BRYANT concur.