RICHARD JAMES LEE, PETITIONER-APPELLANT v. WILLIAM C. GORE, JR., AS COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES, NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, RESPONDENT-APPELLEE

No. COA09-370-2

(Filed 17 August 2010)

## Motor Vehicles— driving while impaired—willful refusal to submit to chemical analysis—driving privileges improperly suspended

The trial court erred in upholding the Division of Motor Vehicle's revocation of petitioner's North Carolina driving privileges. A person's refusal to submit to chemical analysis must be willful in order to suspend that person's driving privileges and a form DHHS 3908 is not a substitute for a "properly executed affidavit" indicating that a person's refusal to submit to chemical analysis was willful, as required by N.C.G.S. § 20-16.2(c1). Because the Division did not receive a properly executed affidavit required by subsection (c1), the Division had no authority to revoke petitioner's driving privileges pursuant to N.C.G.S. § 20-16.2.

Appeal by Petitioner from order entered 22 October 2008 by Judge Henry E. Frye, Jr. in Superior Court, Wilkes County. This matter was originally heard in the Court of Appeals 27 October 2009. An opinion was filed by this Court on 19 January 2010, vacating the order of the Wilkes County Superior Court and remanding to the North Carolina Division of Motor Vehicles. Respondent filed a Petition for Rehearing on 23 February 2010. An order granting the Petition for Rehearing was filed on the 19th day of March 2010.

*Richard J. Lee, J.D., LL.M., Petitioner-Appellant, pro se.*
*Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for Respondent-Appellee.*

McGEE, Judge.

**LEE v. GORE**

[206 N.C. App. 374 (2010)]

Petitioner, a resident and registered driver of the State of Florida, was driving through Wilkes County just before midnight on 22 August 2007, when he was stopped by Officer Jason Ratliff of the Wilkesboro Police Department. Officer Ratliff testified at a later review hearing before the Division of Motor Vehicles (the Division) that he believed probable cause existed to arrest Petitioner for driving while impaired. Officer Ratliff transported Petitioner to an intake center to administer a chemical analysis (by an Intoxilyzer alcohol analyzer) to determine the concentration of alcohol in Petitioner's body. Officer Ratliff testified that Petitioner never specifically refused to submit to the chemical analysis. Officer Ratliff told Petitioner several times that failure to take the chemical analysis would result in Petitioner's being marked as willfully refusing the chemical analysis, and would result in the revocation of Petitioner's North Carolina driving privileges. However, Petitioner did not agree to take the Intoxilyzer test and Officer Ratliff marked "refused" on a form DHHS 3908 at 12:47 a.m. on 23 August 2007.

Officer Ratliff testified he then went to a magistrate to execute an affidavit concerning Petitioner's refusal to submit to a chemical analysis. Form DHHS 3907, titled "Affidavit and Revocation Report," was created by the Administrative Office of the Courts for this purpose. Form DHHS 3907 includes fourteen sections with an empty box before each section. The person swearing to the accuracy of the affidavit, having been "first duly sworn," checks the boxes relevant to the circumstances, and then signs the affidavit in front of an official authorized to administer oaths and execute affidavits. Section fourteen of form DHHS 3907 states: "The driver willfully refused to submit to a chemical analysis as indicated on the attached [form] ☐ DHHS 3908, ☐ DHHS 4003." 3 Officer Ratliff testified that he did not check the box for section fourteen and the affidavit he sent to the Division did not have the box for section fourteen checked. Therefore, the "Affidavit and Revocation Report" sent to the Division did not state that Petitioner had willfully refused to submit to a chemical analysis.

Upon receipt of the form DHHS 3907 sent by Officer Ratliff, the Division revoked Petitioner's North Carolina driving privileges. Petitioner requested a review hearing to contest the revocation,[1] and

---

1. Which served to postpone the suspension of Plaintiff's driving privileges until the outcome of the hearing had been determined. N.C.G.S. § 20-16.2(d). By order of the trial court, the postponement of the suspension was continued pending the outcome of Plaintiff's appeal.

a hearing was conducted on 20 November 2007 before Administrative Hearing Officer P.M. Snow. At this hearing, it was discovered that the copy of form DHHS 3907 received by the Division had an "x" in the section fourteen box. All the other boxes marked on the form DHHS 3907 contained check marks, not "x's." Petitioner's copy of the form DHHS 3907 did not contain the "x" in the box preceding section fourteen.

Hearing Officer Snow decided that the revocation of Petitioner's North Carolina driving privileges was proper, and Petitioner appealed to Wilkes County Superior Court, which affirmed the decision of Hearing Officer Snow. Petitioner then appealed to this Court. Our Court held that the Division lacked the authority to revoke Petitioner's North Carolina driving privileges, because the Division never received an affidavit indicating that Petitioner had willfully refused to submit to a chemical analysis of his blood alcohol level. We therefore vacated the order of the superior court affirming the decision of Hearing Officer Snow, and remanded to the Division for reinstatement of Petitioner's North Carolina driving privileges. *Lee v. Gore*, —— N.C. App. ——, 688 S.E.2d 734 (2010) (filed 19 January 2010). Respondent filed a petition for rehearing in the matter on 23 February 2010, requesting our Court to reconsider certain issues. By order filed 19 March 2010, we granted Respondent's petition, limited to certain issues, and directed Respondent and Petitioner to submit briefs addressing the limited issues included in our order. We now file an amended opinion in this matter in light of the additional arguments presented in the parties' supplemental briefs. This opinion supersedes and replaces the opinion filed 19 January 2010, *Lee v. Gore*, —— N.C. App. ——, 688 S.E.2d 734 (2010).

## Analysis—Willful Refusal

In Petitioner's second argument, he contends the trial court erred in upholding the Division's revocation of Petitioner's North Carolina driving privileges because the Division was without authority to revoke Petitioner's driving privileges.

N.C. Gen. Stat. § 20-1 (2006)[2] states: "The Division of Motor Vehicles of the Department of Transportation is established. This Chapter sets out the powers and duties of the Division." Therefore,

---

2. The events related to this appeal occurred before the effective date of the current version of N.C. Gen. Stat. § 20-16.2. Though we cite the version of the statute in effect on 23 August 2007 for the purposes of this appeal, there are no material differences between the current version of this statute and the version in effect on 23 August 2007.

**LEE v. GORE**

[206 N.C. App. 374 (2010)]

we must look to N.C. Gen. Stat. § 20-1 *et seq.* for the full scope of the duties and powers conferred upon the Division by the General Assembly. N.C. Gen. Stat. § 20-16.2 (2006) is the statute delineating the powers of the Division when a person has been charged with an implied-consent offense, and that person refuses to submit to a chemical analysis.

(c) Request to Submit to Chemical Analysis.—A law enforcement officer or chemical analyst shall designate the type of test or tests to be given and may request the person charged to submit to the type of chemical analysis designated. If the person charged willfully refuses to submit to that chemical analysis, none may be given under the provisions of this section, but the refusal does not preclude testing under other applicable procedures of law.

(c1)Procedure for Reporting Results and Refusal to Division.— Whenever a person refuses to submit to a chemical analysis . . . the law enforcement officer and the chemical analyst *shall* without unnecessary delay *go before an official authorized to administer oaths and execute an affidavit(s) stating []*:

. . . .

(5) The results of any tests given or that the person willfully refused to submit to a chemical analysis.

The officer shall immediately mail the affidavit(s) to the Division. If the officer is also the chemical analyst who has notified the person of the rights under subsection (a), the officer may perform alone the duties of this subsection.

(d) Consequences of Refusal; Right to Hearing before Division; Issues.—*Upon receipt of a properly executed affidavit required by subsection (c1)*, the Division shall expeditiously notify the person charged that the person's license to drive is revoked for 12 months, effective on the tenth calendar day after the mailing of the revocation order unless, before the effective date of the order, the person requests in writing a hearing before the Division.

. . . .

(e) Right to Hearing in Superior Court.—If the revocation for a willful refusal is sustained after the hearing, the person whose license has been revoked has the right to file a petition in the superior court for a hearing on the record. The superior court review shall be limited to whether there is sufficient evidence in

the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license.

N.C.G.S. § 20-16.2 (emphasis added).[3]

Respondent argues that our Court should look to the title of N.C.G.S. § 20-16.2: "Implied consent to chemical analysis; mandatory revocation of license in event of refusal; right of driver to request analysis[,]" and to section (a) of that statute, which mandates that a person authorized to perform a chemical analysis must inform the suspect of certain rights before administering the chemical analysis. N.C.G.S. § 20-16.2(a) states, in part:

> Basis for Officer to Require Chemical Analysis; Notification of Rights.—Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense. Any law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person.

> Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, who shall inform the person orally and also give the person a notice in writing that:

> (1) You have been charged with an implied-consent offense. Under the implied-consent law, you can refuse any test, but your drivers license will be revoked for one year and could be revoked for a longer period of time under certain circumstances, and an officer can compel you to be tested under other laws.

N.C.G.S. § 20-16.2(a). Respondent contends that the Division is empowered to suspend driving privileges when "a person refuses to submit to chemical analysis[.]" Respondent's presentation of the requirements of N.C.G.S. § 20-16.2 seems to negate any requirement that the refusal be "willful." However, Respondent also states that N.C.G.S. § 20-16.2(d) "is nothing more than a statutory embodiment

3. N.C. Gen. Stat. § 20-22 (2006) mandates that the provisions of N.C.G.S. § 20-1 *et seq.* apply equally to non-residents and residents alike.

of due process protections for persons accused of willfully refusing chemical analysis, and [the Division] is not prohibited from suspending a person's driving privilege without receipt of a 'properly executed affidavit.' "

The appellate decisions of our Courts make it clear that a person's refusal to submit to chemical analysis must be willful in order to suspend that person's driving privileges. *See Etheridge v. Peters*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980) (citation omitted) (willful refusal permitting suspension of driving privileges must include actions constituting " 'a conscious choice purposefully made' "); *Steinkrause v. Tatum*, —— N.C. App. ——, ——, 689 S.E.2d 379, 381 (2009) ("N.C. Gen. Stat. § 20-16.2 . . . authorizes a civil revocation of the driver's license when a driver has *willfully* refused to submit to a chemical analysis.") (emphasis added); *State v. Summers*, 132 N.C. App. 636, 643-44, 513 S.E.2d 575, 580 (1999) ("A defendant's refusal to submit to the intoxilyzer test after being charged with DWI can give rise to civil proceedings to revoke defendant's driver license, but *only* if the refusal is a 'willful refusal.' *See* N.C. Gen. Stat. § 20-16.2.") (emphasis added); *In re Suspension of License of Rogers*, 94 N.C. App. 505, 510, 380 S.E.2d 599, 602 (1989) (matter remanded for findings regarding whether the petitioner's refusal to submit to chemical analysis was willful).

Respondent implicitly argues, however, that mere refusal of a chemical analysis must imply willfulness, and the Division may therefore revoke a person's driving privileges based solely on the fact that that person refused to take the test. If we were to adopt Respondent's reading of N.C.G.S. § 20-16.2, no proof of a "willful" refusal would be required for the Division to revoke a person's driving privileges; however, pursuant to N.C.G.S. § 20-16.2(c1)(5) a sworn affidavit indicating that person willfully refused chemical analysis would be required to trigger the Division's obligation to notify that person that his driving privileges had been suspended. Such a result cannot have been the intent of the General Assembly. *In re Mitchell-Carolina Corp.*, 67 N.C. App. 450, 452-53, 313 S.E.2d 816, 818 (1984) ("The rules of statutory construction provide that 'the language of a statute will be interpreted so as to avoid an absurd consequence. . . .' 'Where a literal reading of a statute "will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." ' ") (internal citations omitted).

Nor are we convinced by Respondent's argument that, because the form DHHS 3908 was sent to the Division along with the affidavit, and the form DHHS 3908 was marked "refused," the requirement that the sworn affidavit include an affirmative statement of Petitioner's willful refusal was satisfied.[4] Although form DHHS 3907 includes boxes to check indicating that either form DHHS 3908 or form DHHS 4003 is attached, nowhere in N.C. Gen. Stat. § 20-16.2 is it required that a form DHHS 3908 (or a form DHHS 4003) be incorporated in the affidavit mandated under N.C.G.S. § 20-16.2(c1). We hold that a form DHHS 3908 is not a substitute for a "properly executed affidavit" as required by N.C. Gen. Stat. 20-16.2(c1). This is not to indicate, however, that a form DHHS 3908, or other relevant documents, may not be attached to a properly executed affidavit. We hold only that the affidavit, in whatever form submitted, must indicate that a person's refusal to submit to chemical analysis was willful.

N.C.G.S. § 20-16.2 required that Officer Ratliff complete an affidavit indicating that Petitioner had willfully refused the chemical analysis, and that Officer Ratliff, before an "official authorized to administer oaths and execute [affidavits]," swear under oath to the truth of the information included in the affidavit. Officer Ratliff quite admirably and honestly informed Hearing Officer Snow that Officer Ratliff failed to check the box indicating Petitioner had willfully refused to submit to the chemical analysis before he executed the affidavit in front of the magistrate.[5] Therefore, the requirements of N.C.G.S. § 20-16.2(c1) were not met.

Respondent further argues that our Court did not properly consider the findings of fact from Hearing Officer Snow's 20 November 2007 decision. Respondent first contends that one of Hearing Officer Snow's rulings on a motion made by Petitioner was a finding of fact. In denying Petitioner's motion, Hearing Officer Snow ruled in part:

4. Respondent states elsewhere in his brief that: "Although the test ticket states that the test was 'REFUSED,' because it does not include the word 'WILLFULLY,' the test ticket—and by extension, the affidavit—arguably does not state 'that the person willfully refused to submit to a chemical analysis.' N.C.G.S. § 20-16.2(c1)(5)." Respondent appears to state that the affidavit, along with the form DHHS 3908, does not constitute an unequivocal affirmation that Petitioner's refusal was "willful."

5. Respondent contends that the testimony of Officer Ratliff was ambiguous concerning whether he checked the box indicating Petitioner had willfully refused to submit to chemical analysis. Respondent's brief does not include citation to any testimony indicating ambiguity on this point. Our Court's thorough review of the record, including Officer Ratliff's testimony, shows no ambiguity. Officer Ratliff, by his clear and unambiguous statements, did not check the box on the affidavit indicating Petitioner willfully refused to submit to chemical analysis.

"The affidavits received from Officer Ratliff were Division exhibits One and Two. Exhibit Two, DHHS 3908, which is referred to in the affidavit . . . clearly shows a refusal stamped on the test ticket. Thereby giving the [D]ivision authority to revoke [P]etitioner's driving privilege." This ruling, which includes conclusions of law, is not a finding of fact. The only fact contained in this ruling is that the DHHS 3908 in this case was clearly marked "refused."

Respondent next directs our Court to findings of fact made by the superior court. First, these findings of fact are not relevant to Respondent's contention that we failed to properly consider the findings of Hearing Officer Snow, in that the findings were not made by Hearing Officer Snow. Second, the superior court is directed by statute to act as an appellate court, not as a trial court, in its review. N.C.G.S. § 20-16.2(e) states:

> Right to Hearing in Superior Court.—If the revocation for a willful refusal is sustained after the hearing, the person whose license has been revoked has the right to file a petition in the superior court for a hearing on the record. The superior court review *shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license.*

N.C.G.S. § 20-16.2(e) (emphasis added). Because the superior court was acting as an appellate court, our Court does not review the additional findings of fact made by the superior court, which are surplusage, *id.*; *see also Meza v. Division of Soc. Servs.*, 364 N.C. 61, 65-73, 692 S.E.2d 96, 99-104 (2010); *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658-65, 599 S.E.2d 888, 894-98 (2004); *State v. Hensley*, —— N.C. App. ——, ——, 687 S.E.2d 309, 311 (2010); *Dew v. State ex rel. North Carolina DMV*, 127 N.C. App. 309, 310-11, 488 S.E.2d 836, 837 (1997), and Respondent had no right to appeal those findings. *See State v. Washington*, 116 N.C. App. 318, 320-21, 447 S.E.2d 799, 801 (1994).

Respondent argues that Hearing Officer Snow never "found that Officer Ratliff's affidavit was improperly executed." However, it is the province of our Court to determine the correctness of a hearing officer's conclusions of law; also, Respondent's contention is factually mistaken. Hearing Officer Snow included the following in his order:

*Motion Number Two:* [Petitioner] contended the revocation was not valid because there were no facts supporting reasonable grounds that the petitioner had committed an implied-consent offense on the affidavit (Division Exhibit One). Therefore, he would offer a motion to rescind the revocation based on lack of reasonable grounds.

*Ruling:* Motion Denied.

*If the affidavits were the only evidence in this case the motion may be valid.* However, the officer's testimony is the state[']s best evidence in this case. *The lack of facts supporting reasonable grounds on the affidavit* will carry little weight in determining if reasonable grounds were present. (Emphasis added).

Respondent further argues that because N.C.G.S. § 20-16.2 states that the required sworn affidavit must include "[t]he results of any tests given or that the person willfully refused to submit to a chemical analysis[,]" (emphasis added), under N.C.G.S. § 20-16.2(c1)(5), no willful refusal was required to revoke Petitioner's driving privileges.

Respondent interprets the language of N.C.G.S. § 20-16.2(c1)(5) to mean that as long as the affidavit indicates that at least *one* of the two conditions has been met, the affidavit is sufficient. Respondent argues that, because the Division received a form DHHS 3908 that included "the results of any tests given," the requirements of N.C.G.S. § 20-16.2(c1)(5) were satisfied. First, in the present case *no* test was given. Petitioner refused to submit to chemical analysis. Second, were we to adopt Respondent's interpretation, the second part of N.C.G.S. § 20-16.2(c1)(5) would be rendered meaningless. *Wilkins v. N.C. State Univ.*, 178 N.C. App. 377, 379, 631 S.E.2d 221, 223 (2006) ("It is well established that 'a statute must be construed, if possible, to give meaning and effect to all of its provisions.' ") (internal citation omitted). Third, our appellate courts have consistently conducted a "willfulness" analysis when considering the issue of refusal to submit to chemical analysis. *See Etheridge,* 301 N.C. at 81, 269 S.E.2d at 136; *Steinkrause,* —— N.C. App. at ——, 689 S.E.2d at 381 ("N.C. Gen. Stat. § 20-16.2 . . . authorizes a civil revocation of the driver's license when a driver has *willfully* refused to submit to a chemical analysis.") (emphasis added); *Summers,* 132 N.C. App. at 643-44, 513 S.E.2d at 580 ("A defendant's refusal to submit to the intoxilyzer test after being charged with DWI can give rise to civil proceedings to revoke defendant's driver license, but *only* if the refusal is a 'willful refusal.' *See* N.C. Gen. Stat. § 20-16.2.") (emphasis added); *In re Suspension*

*of License of Rogers,* 94 N.C. App. 505, 510, 380 S.E.2d 599, 602 (1989) (matter remanded for findings regarding whether the petitioner's refusal to submit to chemical analysis was willful).

In the 20 November 2007 hearing conducted pursuant to N.C.G.S. § 20-16.2(d), Hearing Officer Snow concluded in his "Findings of Fact, Conclusions of Law and Decision" that any failure by Officer Ratliff to check the box for section fourteen on the affidavit could not have prejudiced Petitioner, and did not deprive the Division of the authority to revoke Petitioner's license. Hearing Officer Snow concluded, as a matter of law, that Petitioner willfully refused to submit to a chemical analysis and that "the Order of Revocation of the driving privilege of [Petitioner] is sustained."

However, the uncontroverted testimony of Officer Ratliff before Hearing Officer Snow was that Officer Ratliff never marked any box associated with section fourteen on the affidavit before he made his affirmation to the magistrate and executed the affidavit. Officer Ratliff was asked at the hearing: "you never went back and told the magistrate or gave anybody authority to change that affidavit [to check the box associated with section fourteen]." Officer Ratliff responded, "no, sir." Officer Ratliff also agreed that "the copy [of the affidavit that was] with the Division . . . [was] not the same [one] that [Officer Ratliff] swore to in front of the magistrate."

When construing N.C.G.S. § 20-16.2, our Court has stated:

"The intent of the legislature controls the interpretation of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."

*Nicholson v. Killens,* 116 N.C. App. 473, 477, 448 S.E.2d 542, 544 (1994), quoting *In re Banks,* 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (citations omitted). " 'Statutes imposing a penalty are to be strictly construed.' " *Killens,* 116 N.C. App. at 477, 448 S.E.2d at 544, quoting *Carter v. Wilson Construction Co.,* 83 N.C. App. 61, 68, 348 S.E.2d 830, 834 (1986).

N.C.G.S. § 20-16.2 states in relevant part:

(c1) Procedure for Reporting Results and Refusal to Division.— Whenever a person refuses to submit to a chemical analysis, a

person has an alcohol concentration of 0.15 or more, or a person's drivers license has an alcohol concentration restriction and the results of the chemical analysis establish a violation of the restriction, the law enforcement officer and the chemical analyst *shall* without unnecessary delay *go before an official authorized to administer oaths and execute an affidavit*(s) stating []:

. . . .

(5) The results of any tests given or that the person willfully refused to submit to a chemical analysis.

. . . . The officer shall immediately mail the affidavit(s) to the Division. If the officer is also the chemical analyst who has notified the person of the rights under subsection (a), the officer may perform alone the duties of this subsection.

N.C.G.S. § 20-16.2(c1) (emphasis added). *"Upon receipt of a properly executed affidavit required by subsection (c1)*, the Division shall expeditiously notify the person charged that the person's license to drive is revoked for 12 months[.]" N.C.G.S. § 20-16.2(d) (emphasis added).

Construing N.C.G.S. § 20-16.2 strictly, as we are compelled to do, *Killens*, 116 N.C. App. at 477, 448 S.E.2d at 544, we hold that the plain language of the statute requires that the Division receive a "properly executed affidavit" that includes all the requirements set forth in N.C.G.S. § 20-16.2(c1) before the Division is vested with the authority to revoke a person's driving privileges pursuant to N.C.G.S. § 20-16.2.

"The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms." *Domestic Electric Service, Inc. v. Rocky Mt.*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974) (citation omitted). If we were to hold that the Division had the authority to revoke Petitioner's driving privileges without first obtaining an affidavit including a sworn statement of willful refusal as stated in N.C.G.S. § 20-16.2(c1), we would be rendering that language meaningless, as mere surplusage.

The dissenting opinion would affirm the revocation of Petitioner's driving privileges and relies most directly on *Ferguson v. Killens*, 129 N.C. App. 131, 497 S.E.2d 722 (1998), where the Division failed to notify the petitioner that his license had been revoked until ninety-nine days after the petitioner had willfully refused submission to chemical analysis. *Id.* at 141, 497 S.E.2d at 727. In *Ferguson*, the

**LEE v. GORE**

[206 N.C. App. 374 (2010)]

petitioner argued that his license should be reinstated because the Division had violated the mandate of N.C.G.S. § 20-16.2(d), requiring the Division, "[u]pon receipt of a properly executed affidavit required by subsection (c1), [to] expeditiously notify the person charged that the person's license to drive is revoked[.]" The *Ferguson* Court held that, even assuming the Division had violated the notification requirement of N.C.G.S. § 20-16.2(d), the petitioner's argument that his license should be reinstated failed for the following reasons: (1) the petitioner had not shown how any failure on the part of the Division to timely notify him of the revocation had prejudiced the petitioner, and (2) "G.S. 20-16.2(d) states that a license revocation for willful refusal must be sustained if the five conditions specified are met[,]" and "[n]one of these conditions has anything to do with 'expeditious notice.'" *Ferguson*, 129 N.C. App. at 141, 497 S.E.2d at 728.

The facts in *Ferguson* are distinguishable from the present case, and *Ferguson* does not control our analysis or our holding in this matter. First, the petitioner in *Ferguson* made no showing concerning how untimely notification had prejudiced him in any manner, because all the requirements for revoking the petitioner's license pursuant to N.C.G.S. § 20-16.2 had been met. There was no argument in *Ferguson* that the affidavit providing the Division with the authority to revoke the petitioner's license was defective in any way. Therefore, the petitioner's license had been properly revoked.[6] Any untimely notification of the revocation did not deprive the petitioner of the opportunity to challenge the bases for the revocation, nor did the petitioner demonstrate how an untimely notification could have prejudiced him in any other manner.

In the case before us, we have held that a necessary *requirement* for the revocation of Petitioner's driving privileges had not been met: the Division never received an affidavit indicating Petitioner had willfully refused chemical analysis. This corresponds to one of the five requirements for revocation for willful refusal referenced in *Ferguson*, specifically N.C.G.S. § 20-16.2(d)(5): "The person willfully refused to submit to a chemical analysis." Unlike the facts in *Ferguson*, the prejudice to Petitioner in this case is clear: Petitioner had a right to drive in the State of North Carolina. Because the Division erred by revoking Petitioner's North Carolina driving privileges without first receiving a properly executed affidavit stating Petitioner

---

6. Though, due to the petitioner's request for a hearing, the revocation was suspended until the outcome of the hearing had been determined. N.C.G.S.

had willfully refused chemical analysis, Petitioner's right to drive in North Carolina was to be suspended by the Division.

More importantly, unlike the situation in *Ferguson*, the five requirements necessary for a hearing officer to uphold a revocation or suspension, N.C.G.S. §§ 20-16.2(d) (1) to (5), are not relevant to our analysis. We have held that the Division had no authority to suspend Petitioner's driving privileges in the first instance because the Division never received "a properly executed affidavit required by subsection (c1)[.]" N.C.G.S. § 20-16.2(d). Because Petitioner's driving privileges were suspended without authority, those sections of N.C.G.S. § 20-16.2(d) applying to Petitioner's right to a hearing before the Division, and those sections of N.C.G.S. § 20-16.2(d) applying to the requirements for sustaining the suspension, including N.C.G.S. §§ 20-16.2(d) (1) to (5), are not relevant in this case. As Petitioner's driving privileges should not have been suspended in the first instance, no hearing before the Division should have ever occurred.

The dissenting opinion concludes that N.C. Gen. Stat. § 20-16.2(d) provides the right to a hearing and the hearing satisfies the constitutional due process requirement. The dissenting opinion agrees with Hearing Officer Snow that, even if it was an employee of the Division who " 'checked the block for item fourteen as counsel [for Petitioner] contended, this is not a fatal error as [P]etitioner has a remedy through the hearing process.' " As we have stated above, no cause for a hearing was ever properly triggered, as the Division never had the authority to suspend Petitioner's driving privileges.

We are unprepared to conclude that an error prejudicing Petitioner may be cured through a hearing that should not have occurred, because it was triggered by a suspension of Petitioner's driving privileges that should not have happened.[7] The Division did not have authority to suspend Petitioner's driving privileges based upon the affidavit it received from Officer Ratliff. Were we to hold otherwise, we would render meaningless the requirement that the Division first receive an affidavit attesting to a petitioner's willful refusal before suspending that petitioner's driving privileges based upon a willful refusal. The Division would be permitted to suspend any per-

---

7. For example, an appellate court may reverse or modify the final decision of an administrative body if the appellate court determines the final agency decision has prejudiced a petitioner because the final decision was "[m]ade upon unlawful procedure[.]" N.C. Gen. Stat. § 150B-51 (b)(3) (2009); *In re Appeal of Ramseur*, 120 N.C. App. 521, 523-24, 463 S.E.2d 254, 256 (1995).

**LEE v. GORE**

[206 N.C. App. 374 (2010)]

son's driving privileges for willful refusal without first obtaining any evidence or attestation that a willful refusal had occurred. That person would then have to request a hearing in order to compel the State to present any evidence justifying the suspension. If the petitioner did not request a hearing, his driving privileges could be suspended without the Division ever having received any evidence of willful refusal. We do not believe this is contemplated in the clear language of N.C.G.S. § 20-16.2, nor do we believe this could have been the intent of the General Assembly in drafting that statute. We do not believe the General Assembly intended to grant the Division the authority to suspend driving privileges, or revoke a driver's license, without any indication that one of the bases for suspension or revocation required by N.C.G.S. § 20-16.2(c1) had occurred.

Finally, Petitioner argues in his brief that suspension of his driving privileges violated his due process rights under the United States Constitution. Because we have revoked the suspension of Petitioner's driving privileges on other grounds, we do not address Petitioner's due process argument. We do, however, restate that we find a properly executed affidavit stating willful refusal to be a prerequisite to any authority of the Division to suspend driving privileges based upon willful refusal. We therefore cannot agree with the dissenting opinion's apparent conclusion that the affidavit requirement is a mere "administrative procedure" in no manner "affecting the process due a petitioner." We find the facts of the cases cited in the dissenting opinion in support of this position distinguishable from the facts of our case.[8] We do not find that the holdings in the cases cited by the dissenting opinion compel a different result than we reach in this opinion.

We hold that the Division did not receive "a properly executed affidavit required by subsection (c1)" and, therefore, the Division had no authority to revoke Petitioner's driving privileges pursuant to N.C.G.S. § 20-16.2. Absent the authority to revoke Petitioner's license, there was also no authority pursuant to N.C.G.S. § 20-16.2 for the Division to conduct a review hearing, or for appellate review in the superior court.

---

8. For example, in *In re Rogers*, 94 N.C. App. 505, 380 S.E.2d 599 (1989), cited in the dissent, our Court stated that "notification of a right is of little value if there is no remedy for the denial of the right. In the present case, however, any violation of petitioner's rights was unrelated to her alleged decision to refuse the [breathalyser] test." *Id.* at 508, 380 S.E.2d at 600. In the case before us, the violation of Petitioner's rights was directly related to his alleged willful refusal to submit to chemical analysis.

Therefore, the rulings of Hearing Officer Snow and the superior court affirming the revocation of Petitioner's license are void. We vacate the order of the superior court affirming the decision of Hearing Officer Snow, and remand to the Division for reinstatement of Petitioner's North Carolina driving privileges. In light of this holding, we do not address Petitioner's additional arguments.

Vacated and remanded.

Judge BRYANT concurs.

Judge WYNN dissents with a separate opinion.

WYNN, Judge, dissenting.

In light of my reconsideration of this matter upon rehearing, I am inclined to dissent and afford our Supreme Court the opportunity to address the issue of first-impression presented by this case: What remedy is Petitioner entitled to where a law enforcement officer fails to follow the statutory mandate to "execute an affidavit(s) stating that: . . . the person willfully refused to submit to a chemical analysis"? N.C. Gen. Stat. § 20-16.2 (c1) (2009). The majority concludes that because the Division of Motor Vehicles ("DMV") did not receive a properly executed affidavit as mandated by the statute, the DMV was without authority to revoke Petitioner's driving privileges.

The issue here is what remedy Petitioner is entitled to for the error alleged. While the statutory provision here construed employs the word "shall," it does not prescribe the remedy for a violation, nor does it predicate the authority of the DMV on compliance with its terms. *See* N.C. Gen. Stat. § 20-16.2(d)(2009). In determining the consequences of such an error, it is worth considering that our cases distinguish between violations of administrative procedure and those affecting the process due to a petitioner.

This distinction was recognized in *Rice v. Peters, Comr. of Motor Vehicles*, 48 N.C. App. 697, 269 S.E.2d 740 (1980). The petitioner in *Rice* directed this Court to the statutory provision requiring the arresting officer to request that the person arrested submit to a breathalyzer test. *Id.* at 700, 269 S.E.2d at 742. Although the trial court's order indicated that petitioner refused to take the breathalyzer test, the petitioner argued that the trial court erred because its order lacked a "finding that he was requested to submit to the breathalyzer test after being informed of his statutory rights." *Id.* This Court affirmed the revocation, stating "[w]e do not believe the North

Carolina General Assembly intended by its enactment of G.S. 20-16.2(c) to prescribe such a rigid sequence of events as contended by [petitioner]." *Id.*

> The administrative procedures provided for in G.S. 20-16.2 are designed to promote breathalyzer tests as a valuable tool for law enforcement officers in their enforcing the laws against driving under the influence while also protecting the rights of the State's citizens. We hold the purpose of the statute to be fulfilled when the petitioner is given the option to submit or refuse to submit to a breathalyzer test and his decision is made after having been advised of his rights in a manner provided by the statute.

*Id.* at 700-01, 269 S.E.2d at 742 (citations and emphasis omitted).

We faced a similar problem in *In re Suspension of License of Rogers*, 94 N.C. App. 505, 380 S.E.2d 599 (1989). "Under G.S. 20-16.2(a)(6), petitioner had the right to select a witness to view the testing procedures . . . ." *Id.* at 507, 380 S.E.2d at 600. The record in Rogers showed that, although the actual testing occurred in the presence of the witness, the breathalyzer operator performed a simulator test prior to the witness's arrival. *Id.* The superior court ruled that "this statutory provision required the breathalyzer operator to perform the simulator test in the witness's presence and the failure to do so precluded respondent from revoking petitioner's license for her refusal to take the test." *Id.*

This Court disagreed, citing *Rice.* "In reviewing this revocation, the trial court could properly consider only those issues specified in G.S. 20-16.2(d) . . . ." *Id.* at 508, 380 S.E.2d at 600. We acknowledged that "notification of a right is of little value if there is no remedy for the denial of the right. In the present case, however, any violation of petitioner's rights was unrelated to her alleged decision to refuse the test." *Id.*

> Considerations of fairness and accuracy are not present . . . when a motorist refuses to take a test for wholly unrelated reasons. Under G.S. 20-16.2(a), a motorist impliedly consents to chemical analysis if he is charged with impaired driving. Revocation under the statute is a penalty for failing to comply with a condition for the privilege of possessing a license; it is not punishment for the crime for which the motorist was arrested.

*Id.* at 509, 380 S.E.2d at 601.

We again addressed the issue in *Ferguson v. Killens,* 129 N.C. App. 131, 497 S.E.2d 722, *appeal dismissed, disc. review denied,* 348 N.C. 496, 510 S.E.2d 382 (1998). The petitioner in *Ferguson* argued that, because the letter notifying him of the revocation was dated a full ninety days after the alleged refusal occurred, the "DMV did not 'expeditiously notify' him of his one-year license revocation as required by G.S. 20-16.2(d), [and] the revocation must be rescinded." *Id.* at 141, 497 S.E.2d at 727. This Court found that the alleged error was not prejudicial.

> Even if we assume that petitioner was not "expeditiously notif[ied]" as required by the statute, petitioner has made no showing that his failure to be expeditiously notified has prejudiced him. In addition, G.S. 20-16.2(d) states that a license revocation for willful refusal must be sustained if the five conditions specified are met. None of these conditions has anything to do with "expeditious notice." Petitioner's argument fails.

*Id.* at 141, 497 S.E.2d at 727-28.

The result in *Ferguson* is directly at odds with the majority's conclusion in the present case.[9] We held in *Ferguson* that the DMV's failure strictly to comply with the first sentence of subsection (d)—the same provision as is here construed—did not undermine the revocation of driving privileges when the petitioner could not demonstrate any prejudice. *See id.* Petitioner in the present case has not demonstrated that he was prejudiced in any way by the improperly executed affidavit that was received by the DMV.

Moreover, as we noted in *Ferguson,* the statute limits consideration at the hearing to specifically enumerated factors. *Id.* at 141, 497

---

9. I read *Ferguson* differently from the majority primarily because the relevant statute prohibits the revocation of a driver's license pending the hearing, if the driver requests such a hearing. *See* N.C. Gen. Stat. § 20-16.2(d) ("If the person properly requests a hearing, the person retains his or her license, unless it is revoked under some other provision of law, until the hearing is held, the person withdraws the request, or the person fails to appear at a scheduled hearing."). Thus, because the petitioner in *Ferguson* requested a hearing, his license could not have been revoked under the statute until the conclusion of that hearing. *See Ferguson,* 129 N.C. App. at 134, 497 S.E.2d at 724 ("Petitioner requested an administrative review by a DMV hearing officer."). As in *Ferguson,* Petitioner in this case requested a hearing and thus retained his license pending a hearing. I therefore conclude that, like the petitioner in *Ferguson,* Petitioner suffered no prejudice except that attendant upon the hearing, at which he was given the opportunity to contest the revocation of his driving privileges on the basis of the willfulness of his refusal.

S.E.2d at 728. "None of these conditions has anything to do with 'expeditious notice.'" *Id.* Similarly, in this case, none of these conditions has anything to do with the sufficiency of the affidavit. *See* N.C. Gen. Stat. § 20-16.2(d). It follows that Petitioner can not assert the insufficiency of the affidavit as a ground upon which to invalidate the proposed revocation of his driving privileges.

I conclude by pointing out that N.C. Gen. Stat. § 20-16.2(d) provides the right to a hearing. "Such a hearing satisfies the constitutional due process requirement." *Montgomery v. North Carolina Dept. of Motor Vehicles*, 455 F. Supp. 338 (W.D.N.C. 1978), *aff'd*, 599 F.2d 1048 (4th Cir. 1979). On the basis of the precedents considered above, I agree with the DMV hearing officer who first heard Petitioner's case that "[e]ven if an employee of the Division checked the block for item fourteen as counsel contended, this is not a fatal error as the petitioner has a remedy through the hearing process." Accordingly, because I would affirm the revocation of Petitioner's driving privileges, I respectfully dissent and present to the Respondent the opportunity to appeal this issue as a matter of right to our Supreme Court.