RICHARD JAMES LEE, Petitioner v. WILLIAM C. GORE, JR., as Commissioner of the Division of Motor Vehicles, North Carolina Department of Transportation, Respondent

No. 418A10·-

(Filed 26 August 2011)

**Motor Vehicles— revocation of driving privileges—driving while impaired—refusal of chemical analysis—no affidavit indicating willfulness**

The Department of Motor Vehicles (DMV) did not have the authority to revoke petitioner's driving privileges for willful refusal to submit to chemical analysis after being arrested for driving while impaired where the documents submitted to DMV did not indicate that the refusal was willful. DMV has only the powers expressly granted by the legislature and did not have the authority to revoke petitioner's license without an affidavit indicating that petitioner willfully refused to submit to chemical analysis.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 698 S.E.2d 179 (2010), vacating an order entered on 22 October 2008 by Judge Henry E. Frye, Jr. in Superior Court, Wilkes County, and remanding the matter for reinstatement of petitioner's North Carolina driving privileges. Heard in the Supreme Court 15 March 2011.

*Richard J. Lee, pro se, petitioner-appellee.*

*Roy Cooper, Attorney General, by William P. Hart, Jr. and Christopher W. Brooks, Assistant Attorneys General, for respondent-appellant.*

TIMMONS-GOODSON, Justice.

The question presented is whether the Division of Motor Vehicles ("DMV") may revoke driving privileges for a willful refusal to submit to chemical analysis absent receipt of an affidavit swearing that the refusal was indeed willful. Because N.C.G.S. § 20-16.2(d) requires that the DMV first receive a "properly executed affidavit" from law enforcement swearing to a willful refusal to submit to chemical analysis before revoking driving privileges, we hold that the DMV lacked the authority to revoke the driving privileges of petitioner,

Richard James Lee. Accordingly, we affirm the decision of the Court of Appeals.

## I. Background

A Wilkesboro police officer stopped petitioner for speeding on the night of 22 August 2007. Believing that probable cause existed to arrest petitioner for driving while impaired, the officer took petitioner to an intake center to undergo chemical analysis by way of an Intoxilyzer test. Petitioner did not submit to chemical analysis.

The officer told petitioner several times that his failure to take the Intoxilyzer test would be regarded as a refusal to take the test. This, the officer stated, would result in revocation of petitioner's North Carolina driving privileges. Nevertheless, petitioner did not agree to take the test, and the officer marked on form DHHS 3908 that petitioner "refused" the test at 12:47 a.m. on 23 August 2007.

Later that day the officer appeared before a magistrate and executed an affidavit regarding petitioner's refusal to submit to chemical analysis. Form DHHS 3907, entitled "Affidavit and Revocation Report," was created by the Administrative Office of the Courts for this purpose. The form includes fourteen sections, each preceded by an empty box. The person swearing to the accuracy of the affidavit checks the boxes relevant to the circumstances and then signs the affidavit in the presence of an official authorized to administer oaths and execute affidavits.

Section fourteen of form DHHS 3907 states: "The driver willfully refused to submit to a chemical analysis as indicated on the attached [form] [ ] DHHS 3908. [ ] DHHS 4003." The officer did not check the box for section fourteen. The officer then mailed both the DHHS 3907 and DHHS 3908 forms to the DMV. Neither form indicated a *willful* refusal to submit to chemical analysis.

Nevertheless, upon receiving the forms, the DMV suspended petitioner's North Carolina driving privileges for one year, effective 30 September 2007, for refusing to submit to chemical analysis. Upon petitioner's request,[1] a review to contest the revocation was conducted before an administrative hearing officer on 20 November 2007. At this hearing it came to light that the copy of form DHHS 3907

---

1. By statute this request postponed the revocation of petitioner's driving privileges until the outcome of the hearing had been determined. N.C.G.S. § 20-16.2(d) (2006). The postponement of the suspension was continued pending the outcome of petitioner's appeal.

on file with the DMV had an "$x$" in the section fourteen box. All the other boxes marked on the form DHHS 3907 contained check marks, not $x$s. Petitioner's copy of form DHHS 3907 did not contain an $x$ in the box preceding section fourteen.

On 20 November 2007, the day of the administrative hearing, the hearing officer concluded that the revocation of petitioner's North Carolina driving privileges was proper. Petitioner appealed to Superior Court, Wilkes County, which affirmed the decision of the hearing officer on 20 October 2008. Petitioner then appealed to the Court of Appeals, which concluded unanimously on 19 January 2010 that the DMV lacked the authority to revoke petitioner's North Carolina driving privileges. *Lee v. Gore*, —— N.C. App. ——, 688 S.E.2d 734 (2010). Critical to the Court of Appeals' analysis was that the DMV never received the statutorily required affidavit indicating that petitioner had willfully refused to submit to a chemical analysis of his blood alcohol level.

The DMV thereafter sought and was granted a rehearing. Upon rehearing, a majority of the Court of Appeals reached the same conclusion in a decision dated on 17 August 2010. *Lee v. Gore*, —— N.C. App. ——, 698 S.E.2d 179 (2010). One member of the panel dissented, concluding that any problems posed by the DHHS 3907 affidavit amounted to an inconsequential violation of administrative procedure, rather than a violation of petitioner's right to due process. The DMV brings the appeal to us based upon this dissent.

## II. Analysis

Whether the DMV may revoke driving privileges for a willful refusal to submit to chemical analysis, absent a "properly executed affidavit" requires us to interpret a provision of the Motor Vehicle Laws of North Carolina, which are set forth in Chapter 20 of the General Statutes. When, as here, statutory construction is at issue we must ascertain the intent of the legislating body and adhere to that intent. "[T]he language of the act, the spirit of the act and what the act seeks to accomplish" are the greatest indicia of intent. *N.C. Sav. & Loan League v. N.C. Credit Union Comm'n*, 302 N.C. 458, 467, 276 S.E.2d 404, 410 (1981) (citation and quotation marks omitted). While "the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts," an agency's interpretation is not binding. *Id.* at 466, 276 S.E.2d at 410; *see also Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999) ("The interpretation of a statute given

by the agency charged with carrying it out is entitled to great weight." (citation omitted)). However, when, as here, the language of a statute is clear and unambiguous, there is no room for judicial construction, and we give the statute its plain and definitive meaning. *Walker v. Bd. of Trs. of N.C. Local Gov'tal Emps.' Ret. Sys.*, 348 N.C. 63, 65-66, 499 S.E.2d 429, 430–31 (1998) (concluding that when statutory language is clear, there is no need for judicial construction).

Our disposition of this case turns on the limited authority of the DMV. The DMV is a division of the North Carolina Department of Transportation ("DOT"), which has been described by this Court as " 'an inanimate, artificial creature of statute [whose] . . . form, shape and authority are defined by the Act by which it was created' " and which " 'is as powerless to exceed its authority as is a robot to act beyond the limitations imposed by its own mechanism.' " *Clark v. Asheville Contr'g Co., Inc.*, 316 N.C. 475, 486, 342 S.E.2d 832, 838 (1986) (citation omitted); *see also In re Broad & Gales Creek Cmty. Ass'n*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980) (observing that an administrative agency "is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority" (citation omitted)). Chapter 20 of our statutes creates the DMV, sets out its powers and duties, and delineates the DMV's authority to discharge these duties. *See* N.C.G.S. § 20-1 (2009) ("The Division of Motor Vehicles of the Department of Transportation is established. This Chapter sets out the powers and duties of the Division."). As such, the DMV possesses only those powers expressly granted to it by our legislature or those which exist by necessary implication in a statutory grant of authority.

N.C.G.S. § 20-16.2, the statutory grant of authority at issue here, enables the DMV to act when a driver is charged with an implied-consent offense, such as driving while impaired, and the driver refuses to submit to chemical analysis.[2] Under subsection (a) of the statute, drivers on our highways "consent to a chemical analysis [test] if charged with an implied-consent offense." *Id.* § 20-16.2(a) (2006). Before the test is administered, however, a chemical analyst who is authorized to administer a breath test must give the person charged both oral

---

2. The events related to this appeal occurred before the effective date of the current version of N.C.G.S. § 20-16.2. Though we cite the version of the statute in effect on 23 August 2007, for the purposes of this appeal there are no material differences between the current version of this statute and the version in effect on 23 August 2007.

and written notice of his rights as enumerated in that subsection, including his right to refuse to be tested. *Id.*[3]

Subsections (c) and (c1) then address the refusal to submit to chemical analysis, providing as follows:

> (c) Request to Submit to Chemical Analysis.—A law enforcement officer or chemical analyst shall designate the type of test or tests to be given and may request the person charged to submit to the type of chemical analysis designated. If the person charged willfully refuses to submit to that chemical analysis, none may be given under the provisions of this section, but the refusal does not preclude testing under other applicable procedures of law.

> (c1) Procedure for Reporting Results and Refusal to Division.—Whenever a person refuses to submit to a chemical analysis . . . the law enforcement officer and the chemical analyst *shall* without unnecessary delay *go before an official authorized to administer oaths and execute an affidavit(s) stating* that:

> . . . .

> (5) The results of any tests given or *that the person willfully refused to submit to a chemical analysis.*

> . . . The officer shall immediately mail the affidavit(s) to the Division. If the officer is also the chemical analyst who has notified the person of the rights under subsection (a), the officer may perform alone the duties of this subsection.

N.C.G.S. § 20-16.2(c), (c1) (2006) (emphases added).

Next, subsection (d) addresses the consequences stemming from a driver's refusal to submit to chemical analysis and provides for administrative review:

> (d) Consequences of Refusal; Right to Hearing before Division; Issues.—*Upon receipt of a properly executed affidavit required by subsection (c1)*, the Division shall expeditiously notify the person charged that the person's license to drive is revoked for 12 months, effective on the tenth calendar day after the mailing of the revocation order unless, before the effective

---

3. Subsection (b) addresses the testing of unconscious persons and is not at issue here. N.C.G.S. § 20-16.2(b) (2006).

date of the order, the person requests in writing a hearing before the Division.

*Id.* § 20-16.2(d) (2006) (emphasis added).

Last, subsection (e) authorizes superior court review.

(e) Right to Hearing in Superior Court.—If the revocation for a willful refusal is sustained after the hearing, the person whose license has been revoked has the right to file a petition in the superior court for a hearing on the record. The superior court review shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license.

*Id.* § 20-16.2(e) (2006).

Our appellate courts have had a number of opportunities to consider N.C.G.S. § 20-16.2. These decisions confirm that a person's refusal to submit to chemical analysis must be willful to suspend that person's driving privileges. *See, e.g., Etheridge v. Peters*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980) (analyzing N.C.G.S. § 20-16.2 and concluding that a "willful refusal" permitting suspension of driving privileges must include actions "constitut[ing] a conscious choice purposefully made" (citation and quotation marks omitted)); *Steinkrause v. Tatum*, 201 N.C. App. 289, 292, 689 S.E.2d 379, 381 (2009) ("N.C. Gen. Stat. § 20-16.2 . . . authorizes a civil revocation of the driver's license when a driver has willfully refused to submit to a chemical analysis."), *aff'd per curiam*, 364 N.C. 419, 700 S.E.2d 222 (2010).

Here the Court of Appeals concluded that the DMV did not receive " 'a properly executed affidavit required by subsection (c1)' " indicating petitioner's willful refusal to submit to chemical analysis. —— N.C. App. at ——, 698 S.E.2d at 188. Consequently, the Court of Appeals held that the DMV lacked authority to revoke petitioner's driving privileges under N.C.G.S. § 20-16.2(d). *Id.* at ——, 698 S.E.2d at 188. The Court of Appeals further held that, absent this authority, there was also no authority in N.C.G.S. § 20-16.2 for a review hearing or superior court review. *Id.* at ——, 698 S.E.2d at 188.

Echoing the dissent, however, the DMV contends that the Court of Appeals erred in reaching these conclusions. The DMV argues that

it has the authority to revoke petitioner's driving privileges because petitioner was charged upon reasonable grounds with the implied-consent offense of driving while impaired, was notified of his rights under N.C.G.S. § 20-16.2(a) and willfully refused to submit to chemical analysis, and thus was subject to the consequences outlined in N.C.G.S. § 20-16.2(d). We disagree that the DMV had the authority to revoke petitioner's license under these circumstances, absent an affidavit indicating that petitioner willfully refused to submit to chemical analysis.

N.C.G.S. § 20-16.2(c1) is clear and unambiguous. When a person refuses to submit to chemical analysis "the law enforcement officer and the chemical analyst shall without unnecessary delay go before an official authorized to administer oaths and execute an affidavit(s) stating . . . [t]he results of any tests given or that the person willfully refused to submit to a chemical analysis." N.C.G.S. § 20-16.2(c1). In the instant case the officer swore out the DHHS 3907 affidavit and attached to that affidavit the DHHS 3908 chemical analysis result form indicating the test was "refused." Yet, neither document indicated that petitioner's refusal to participate in chemical analysis was willful. As such, the requirements of section 20-16.2(c1) have not been met.

Additionally, the requirements of N.C.G.S. § 20-16.2(d) have not been satisfied. The plain language of subsection (d) requires that the DMV receive "a properly executed affidavit" meeting all the requirements set forth in N.C.G.S. § 20-16.2(c1) before the DMV is authorized to revoke a person's driving privileges under N.C.G.S. § 20-16.2. Here neither the DHHS 3907 affidavit submitted to the DMV, nor the attached DHHS 3908 form indicating a refusal, states that the refusal was willful. Consequently, the DMV lacked authorization to revoke petitioner's license.

These conclusions are sufficient to dispose of the issue before us. Nevertheless, we address three additional concerns. One aspect of this case is particularly disturbing. Specifically, the affidavit sworn to by the officer and sent to the DMV, which gave no indication that petitioner's refusal was willful, was later altered to indicate otherwise. We are not called upon today to determine the outer boundaries of what constitutes "a properly executed affidavit" under section 20-16.2(d) so as to enable the DMV to revoke a license for willful refusal. Nevertheless, we are quite confident that an affidavit materially altered outside the presence of someone authorized to administer oaths, or an affidavit that omits entirely the material element of

"willfulness," is not "properly executed" for the purposes of section 20-16.2(d).

Second, while we are cognizant of the strong public policy favoring the removal of unsafe drivers from our roads, the DMV's burden here was light. The DMV could have cured the deficiency in the affidavit by simply inquiring of the officer whether the affidavit contained an omission. If so, the DMV could have requested that the officer swear out a new, properly executed affidavit. Instead, the DMV took the position that the error described here was cured through a hearing the DMV lacked the authority to conduct. To countenance this interpretation would render meaningless the statutory requirement that the DMV receive an affidavit attesting to willful refusal before suspending driving privileges for that reason. *See Town of Pine Knoll Shores v. Evans*, 331 N.C. 361, 366, 416 S.E.2d 4, 7 (1992) (observing that this Court "follow[s] the maxims of statutory construction that words of a statute are not to be deemed useless or redundant" (citations omitted)). The DMV's interpretation would also permit suspension of driving privileges for willful refusal without an evidentiary predicate. The suspended driver would then have to request a hearing to contest the State's actions. Yet, if the driver failed to request a hearing, his driving privileges likely would be suspended even though the DMV never received evidence of willful refusal. This result is not contemplated in N.C.G.S. § 20-16.2. Simply put, the DMV lacks the authority to suspend driving privileges, or revoke a driver's license, without some indication that a basis for suspension or revocation as required by N.C.G.S. § 20-16.2(c1) has occurred.

Finally, to hold otherwise essentially adopts a "no harm, no foul" analysis. Absent prejudice, so the argument goes, a statutory violation such as we have here may be overlooked. As we explain above, however, this case involves the DMV's authority to act. This is not a case that turns upon prejudice to the petitioner.

### III. Conclusion

For the reasons stated above, we affirm the decision of the Court of Appeals.

AFFIRMED.