IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1200

 Filed: 6 August 2019

Union County, No. 18 CVS 524

ROY EUGENE COUICK, Petitioner

 v.

TORRE JESSUP, COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES,
STATE OF NORTH CAROLINA, Respondent.

 Appeal by respondent from order entered 25 May 2018 by Judge Jeffery K.

Carpenter in Superior Court, Union County. Heard in the Court of Appeals 24 April

2019.

 James J. Harrington for petitioner-appellee.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kathryne E.
 Hathcock, for respondent-appellant.

 STROUD, Judge.

 Respondent Commissioner of the Division of Motor Vehicles appeals an order

vacating a decision of the Division of Motor Vehicles, rescinding its previously

imposed revocation and reinstating petitioner’s driving privilege. Because the

affidavit and amended affidavit both showed the arresting officer designated a blood

test but petitioner refused a breath test, neither was a properly executed affidavit

showing petitioner willfully refused blood alcohol testing under North Carolina
 COUICK V. JESSUP

 Opinion of the Court

General Statute § 20-16.2. The trial court correctly concluded DMV did not have

jurisdiction to revoke petitioner’s license upon receipt of the affidavits, so we affirm.

 I. Background

 On 7 July 2017, petitioner was charged with driving while impaired and

allegedly refused to submit to a chemical analysis. Deputy Justin Griffin of the Union

County Sheriff’s Office, the law enforcement officer, filed an “Affidavit and Revocation

Report of Law Enforcement Officer” form (DHHS 3907) (“Affidavit”). The Affidavit

noted Deputy Griffin requested petitioner submit to a blood analysis and had

specifically marked out the word “breath” for the type of chemical analysis

designated. Attached and incorporated into the affidavit was the “Rights of Person

Requested to Submit to a Chemical Analysis to Determine Alcohol Concentration or

Presence of an Impairing Substance Under N.C.G.S. §20-16.2(a)” form (DHHS 4081)

(“Rights Form”), which noted “Breath” as the type of analysis refused by petitioner.

 On 14 November 2017, Deputy Griffin amended both the Affidavit and Rights

Form. The amended Affidavit now noted that Deputy Griffin was both the law

enforcement officer and chemical analyst but again he marked out the word “breath”

and circled blood as the type of analysis designated. The amended Rights Form still

reflected “Breath” as the type of analysis refused.

 Petitioner was notified that his driving privilege would be suspended in

December of 2017 for his refusal to submit to a chemical test. Petitioner requested a

 -2-
 COUICK V. JESSUP

 Opinion of the Court

hearing on the matter, and in February of 2018 the Division of Motor Vehicles

(“DMV”) decided “petitioner’s refusal to submit to a chemical analysis is sustained.”

Petitioner’s driving privilege was suspended effective 18 February 2018.

 On 2 March 2018, petitioner filed a petition for a hearing in the trial court

regarding his suspended driving privilege. The trial court found “the Division seeks

to revoke the Petitioner’s driving privilege for willfully refusing a chemical analysis

(specifically a breath analysis) that the Petitioner was not requested to submit to”

because the Affidavits indicate “Petitioner was requested to submit to a blood

analysis and only a blood analysis[.]” Relying on Lee v. Gore, 365 N.C. 227, 717 S.E.2d

356 (2011), the trial court determined the DMV did not have the authority to revoke

defendant’s privilege because “the affidavits signed on July 7, 2017 and on November

9, 2017 are not ‘properly executed affidavits’ to give rise to a revocation of the

Petitioner’s driving privilege for failing to submit to a chemical analysis of his

breath.” The trial court vacated the prior decision of the DMV, revoked the DMV’s

previously imposed revocation, and reinstated petitioner’s driving privilege.

Respondent appeals.

 II. Properly Executed Affidavit

 Respondent contends that its “receipt of a properly executed affidavit under

N.C. Gen. Stat. § 20-16.2(d) provided the requisite jurisdiction for respondent to

revoke petitioner’s license under N.C. Gen. Stat. § 20-16.2.” (Original in all caps.)

 -3-
 COUICK V. JESSUP

 Opinion of the Court

 [O]n appeal from a DMV hearing, the superior court sits as
 an appellate court, and no longer sits as the trier of fact.
 Accordingly, our review of the decision of the superior court
 is to be conducted as in other cases where the superior
 court sits as an appellate court. Under this standard we
 conduct the following inquiry: (1) determining whether the
 trial court exercised the appropriate scope of review and, if
 appropriate, (2) deciding whether the court did so properly.
 . . . . We hold that these cases provide the appropriate
 standard of review for this Court under the amended
 provisions of N.C. Gen. Stat. § 20–16.2.

Johnson v. Robertson, 227 N.C. App. 281, 286–87, 742 S.E.2d 603, 607 (2013)

(citations and quotation marks omitted). Furthermore, “[q]uestions of statutory

interpretation of a provision of the Motor Vehicle Laws of North Carolina are

questions of law and are reviewed de novo by this Court.” Id. at 283, 742 S.E.2d at

605 (citation and quotation marks omitted).

 Respondent contends that it had authority to revoke petitioner’s license upon

receipt of the Affidavit because the Affidavit “contained all requisite jurisdictional

elements – boxes 1, 4, 7 and 14.” As Lee emphasizes, respondent must receive “a

properly executed affidavit meeting all of the requirements set forth in N.C.

Gen. Stat. § 20-16.2(c1) before the DMV is authorized to revoked a person’s driving

privileges.” 365 N.C. at 233, 717 S.E.2d at 360-61 (quotation marks omitted).

Specifically, Respondent argues the affidavit must allege that:

 (1) The person was charged with an implied-consent
 offense or had an alcohol concentration restriction
 on the driver’s license[, Box 4 of the Affidavit];
 (2) A law enforcement officer had reasonable grounds

 -4-
 COUICK V. JESSUP

 Opinion of the Court

 to believe that the person had committed an
 implied-consent offense or violated the alcohol
 concentration restriction on the driver’s license[,
 Box 1 of the Affidavit];
 ....
 (5) The results of any tests given or that the person
 willfully refused to submit to a chemical analysis[,
 Box 14 of the Affidavit].

N.C. Gen. Stat. § 20-16.2(c1) (2017) (emphasis added). In other words, respondent

contends box 9 of the form is “immaterial” to its jurisdiction to revoke but

acknowledges that box 14 is essential. The problem here is that box 14 conflicts with

box 9 on this Affidavit and the Affidavit on its face did not establish jurisdiction. See

generally Lee, 365 N.C. at 233, 717 S.E.2d at 360-61. Respondent relies upon Lee

for its argument that the Affidavit was sufficient to confer jurisdiction for revocation,

but Respondent overlooks the factual differences between Lee and this case as well

as the additional statutory requirement relevant to this case. See generally N.C. Gen.

Stat. § 16.2; Lee, 365 N.C. 227, 717 S.E.2d 356.

 In Lee, the Supreme Court considered a case where a police officer stopped a

driver for speeding and the officer believed the driver was driving while impaired. Id.

at 228, 717 S.E.2d at 357. The officer took the driver to an intake center to “undergo

chemical analysis by way of an Intoxilyzer test.” Id. The officer told the driver

“several times that his failure to take the Intoxilyzer test would be regarded as a

refusal to take the test” and would “result in revocation of petitioner’s North Carolina

driving privileges.” Id. The driver still refused to take the test, and the officer noted

 -5-
 COUICK V. JESSUP

 Opinion of the Court

“on form DHHS 3908” that the driver had “‘refused’ the test at 12:47 a.m. on 23

August 2007.” Id.

 Later that day the officer appeared before a
 magistrate and executed an affidavit regarding petitioner’s
 refusal to submit to chemical analysis. Form DHHS 3907,
 entitled “Affidavit and Revocation Report,” was created by
 the Administrative Office of the Courts for this purpose.
 The form includes fourteen sections, each preceded by an
 empty box. The person swearing to the accuracy of the
 affidavit checks the boxes relevant to the circumstances
 and then signs the affidavit in the presence of an official
 authorized to administer oaths and execute affidavits.
 Section fourteen of form DHHS 3907 states: “The
 driver willfully refused to submit to a chemical analysis as
 indicated on the attached form DHHS 3908. DHHS 4003.”
 The officer did not check the box for section fourteen. The
 officer then mailed both the DHHS 3907 and DHHS 3908
 forms to the DMV. Neither form indicated a willful refusal
 to submit to chemical analysis.
 Nevertheless, upon receiving the forms, the DMV
 suspended petitioner’s North Carolina driving privileges
 for one year, effective 30 September 2007, for refusing to
 submit to chemical analysis.

Id. at 228, 717 S.E.2d at 357-58.

 The driver requested a hearing to contest the license revocation, and at the

November 2007 hearing

 it came to light that the copy of form DHHS 3907 on file
 with the DMV had an ‘x’ in the section fourteen box. All
 the other boxes marked on the form DHHS 3907 contained
 check marks, not xs. Petitioner’s copy of form DHHS 3907
 did not contain an x in the box preceding section fourteen.

 -6-
 COUICK V. JESSUP

 Opinion of the Court

Id. at 228-29, 717 S.E.2d at 358. The hearing officer upheld the license revocation,

and the driver appealed to Superior Court, which affirmed. Id. at 229, 717 S.E.2d at

358. The driver then appealed to the Court of Appeals, which reversed the Superior

Court because “DMV never received the statutorily required affidavit indicating that

petitioner had willfully refused to submit to a chemical analysis of his blood alcohol

level.” Id. Based upon a dissent which considered the error in the DHHS 3907

Affidavit as “an inconsequential violation of administrative procedure, rather than a

violation of petitioner’s right to due process[,]” DMV appealed. Id.

 Our Supreme Court agreed with the majority opinion that DMV had no

jurisdiction to revoke the license because the Affidavit did not show the driver had

willfully refused the Intoxilyzer test. Id. at 365 N.C. at 229-34, 717 S.E.2d at 358-61.

The Court then explained that its “disposition of this case turns on the limited

authority of the DMV.” Id. at 230, 717 S.E.2d at 359.

 The DMV is a division of the North Carolina Department
 of Transportation (“DOT”), which has been described by
 this Court as an inanimate, artificial creature of statute
 whose form, shape and authority are defined by the Act by
 which it was created and which is as powerless to exceed
 its authority as is a robot to act beyond the limitations
 imposed by its own mechanism. Chapter 20 of our statutes
 creates the DMV, sets out its powers and duties, and
 delineates the DMV’s authority to discharge these duties.
 As such, the DMV possesses only those powers expressly
 granted to it by our legislature or those which exist by
 necessary implication in a statutory grant of authority.
 N.C.G.S. § 20–16.2, the statutory grant of authority
 at issue here, enables the DMV to act when a driver is

 -7-
 COUICK V. JESSUP

 Opinion of the Court

charged with an implied-consent offense, such as driving
while impaired, and the driver refuses to submit to
chemical analysis. Under subsection (a) of the statute,
drivers on our highways consent to a chemical analysis test
if charged with an implied-consent offense. Before the test
is administered, however, a chemical analyst who is
authorized to administer a breath test must give the person
charged both oral and written notice of his rights as
enumerated in that subsection, including his right to refuse
to be tested.
 Subsections (c) and (c1) then address the refusal to
submit to chemical analysis, providing as follows:
 (c) Request to Submit to Chemical
 Analysis.—A law enforcement officer or
 chemical analyst shall designate the type of
 test or tests to be given and may request the
 person charged to submit to the type of
 chemical analysis designated. If the person
 charged willfully refuses to submit to that
 chemical analysis, none may be given under
 the provisions of this section, but the refusal
 does not preclude testing under other
 applicable procedures of law.
 (c1) Procedure for Reporting Results
 and Refusal to Division.—Whenever a person
 refuses to submit to a chemical analysis the
 law enforcement officer and the chemical
 analyst shall without unnecessary delay go
 before an official authorized to administer
 oaths and execute an affidavit(s) stating that:
 (5) The results of any tests
 given or that the person willfully refused to
 submit to a chemical analysis.
 The officer shall immediately
 mail the affidavit(s) to the Division. If the
 officer is also the chemical analyst who has
 notified the person of the rights under
 subsection (a), the officer may perform alone
 the duties of this subsection.

 -8-
 COUICK V. JESSUP

 Opinion of the Court

 N.C.G.S. § 20–16.2(c), (c1) (2006).1
 Next, subsection (d) addresses the consequences
 stemming from a driver’s refusal to submit to chemical
 analysis and provides for administrative review:
 (d) Consequences of Refusal; Right to
 Hearing before Division; Issues.—Upon
 receipt of a properly executed affidavit
 required by subsection (c1), the Division shall
 expeditiously notify the person charged that
 the person’s license to drive is revoked for 12
 months, effective on the tenth calendar day
 after the mailing of the revocation order
 unless, before the effective date of the order,
 the person requests in writing a hearing
 before the Division.
 Id. § 20–16.2(d) (2006).
 Last, subsection (e) authorizes superior court
 review.
 (e) Right to Hearing in Superior
 Court.—If the revocation for a willful refusal
 is sustained after the hearing, the person
 whose license has been revoked has the right
 to file a petition in the superior court for a
 hearing on the record. The superior court
 review shall be limited to whether there is
 sufficient evidence in the record to support
 the Commissioner’s findings of fact and
 whether the conclusions of law are supported
 by the findings of fact and whether the
 Commissioner committed an error of law in
 revoking the license.
 Id. § 20–16.2(e) (2006).
 Our appellate courts have had a number of
 opportunities to consider N.C.G.S. § 20–16.2. These
 decisions confirm that a person’s refusal to submit to
 chemical analysis must be willful to suspend that person’s
 driving privileges.
 Here the Court of Appeals concluded that the DMV

 1
 North Carolina General Statute § 20-16.2 has been amended since 2006, but none of the
amendments effect the substance of this case. See N.C. Gen. Stat. § 20-16.2 (2017) (History).

 -9-
 COUICK V. JESSUP

 Opinion of the Court

did not receive a properly executed affidavit required by
subsection (c1) indicating petitioner’s willful refusal to
submit to chemical analysis. Consequently, the Court of
Appeals held that the DMV lacked authority to revoke
petitioner’s driving privileges under N.C.G.S. § 20–16.2(d).
The Court of Appeals further held that, absent this
authority, there was also no authority in N.C.G.S. § 20–
16.2 for a review hearing or superior court review.
 Echoing the dissent, however, the DMV contends
that the Court of Appeals erred in reaching these
conclusions. The DMV argues that it has the authority to
revoke petitioner’s driving privileges because petitioner
was charged upon reasonable grounds with the implied-
consent offense of driving while impaired, was notified of
his rights under N.C.G.S. § 20–16.2(a) and willfully refused
to submit to chemical analysis, and thus was subject to the
consequences outlined in N.C.G.S. § 20–16.2(d). We
disagree that the DMV had the authority to revoke
petitioner’s license under these circumstances, absent an
affidavit indicating that petitioner willfully refused to
submit to chemical analysis.
 N.C.G.S. § 20–16.2(c1) is clear and unambiguous.
When a person refuses to submit to chemical analysis the
law enforcement officer and the chemical analyst shall
without unnecessary delay go before an official authorized
to administer oaths and execute an affidavit(s) stating the
results of any tests given or that the person willfully
refused to submit to a chemical analysis. In the instant
case the officer swore out the DHHS 3907 affidavit and
attached to that affidavit the DHHS 3908 chemical
analysis result form indicating the test was “refused.” Yet,
neither document indicated that petitioner’s refusal to
participate in chemical analysis was willful. As such, the
requirements of section 20–16.2(c1) have not been met.
 Additionally, the requirements of N.C.G.S. § 20–
16.2(d) have not been satisfied. The plain language of
subsection (d) requires that the DMV receive “a properly
executed affidavit” meeting all the requirements set forth
in N.C.G.S. § 20–16.2(c1) before the DMV is authorized to
revoke a person’s driving privileges under N.C.G.S. § 20–

 - 10 -
 COUICK V. JESSUP

 Opinion of the Court

 16.2. Here neither the DHHS 3907 affidavit submitted to
 the DMV, nor the attached DHHS 3908 form indicating a
 refusal, states that the refusal was willful. Consequently,
 the DMV lacked authorization to revoke petitioner’s license.
 ....
 [W]hile we are cognizant of the strong public policy
 favoring the removal of unsafe drivers from our roads, the
 DMV’s burden here was light. The DMV could have cured
 the deficiency in the affidavit by simply inquiring of the
 officer whether the affidavit contained an omission. If so,
 the DMV could have requested that the officer swear out a
 new, properly executed affidavit. Instead, the DMV took the
 position that the error described here was cured through a
 hearing the DMV lacked the authority to conduct. To
 countenance this interpretation would render meaningless
 the statutory requirement that the DMV receive an
 affidavit attesting to willful refusal before suspending
 driving privileges for that reason. The DMV's
 interpretation would also permit suspension of driving
 privileges for willful refusal without an evidentiary
 predicate. The suspended driver would then have to
 request a hearing to contest the State’s actions. Yet, if the
 driver failed to request a hearing, his driving privileges
 likely would be suspended even though the DMV never
 received evidence of willful refusal. This result is not
 contemplated in N.C.G.S. § 20–16.2. Simply put, the DMV
 lacks the authority to suspend driving privileges, or revoke
 a driver’s license, without some indication that a basis for
 suspension or revocation as required by N.C.G.S. § 20–
 16.2(c1) has occurred.
 Finally, to hold otherwise essentially adopts a “no
 harm, no foul” analysis. Absent prejudice, so the argument
 goes, a statutory violation such as we have here may be
 overlooked. As we explain above, however, this case involves
 the DMV’s authority to act. This is not a case that turns
 upon prejudice to the petitioner.

Id. at 229-234, 717 S.E.2d at 358-61 (emphasis added) (citations, quotation marks,

ellipses, brackets, and footnotes omitted). The Supreme Court affirmed the Court of

 - 11 -
 COUICK V. JESSUP

 Opinion of the Court

Appeals opinion and held “that the DMV lacked the authority to revoke the driving

privileges of petitioner[.]” Id. at 227, 717 S.E.2d at 357. Based on Lee, respondent

contends, “Information contained in Box #9 of the Affidavit regarding the type

of chemical test requested is immaterial to a determination of whether the

Petitioner’s license should be revoked pursuant to N.C. Gen. Stat. § 20-16.2.”

 Respondent initially contends that marking “blood” instead of “breath” was

merely a clerical error. To be clear, this is not simply a matter of checking boxes

where a box was missed and later filled in, as in Lee, id. at 228, 717 S.E.2d at 358, or

a misplaced mark could be misunderstood as a strikeout when it was intended as a

checkmark to indicate just the opposite of what a strikeout would accomplish. Box 9

leaves blanks for the date and time to be filled in by hand and then the preprinted

text on the form states, “I requested the driver to submit to chemical analysis of

his/her breath/ or blood/ or urine.” On both Affidavits “breath” and “urine” are both

marked out and the word “blood” is circled. This is not merely a clerical error

indicating a “minor mistake” but rather a purposeful choice to mark out “breath” and

“urine[,]” and to designate “blood[.]” See State v. Allen, ___ N.C. App. ___, ___, 790

S.E.2d 588, 591 (2016) (“A clerical error is defined as, an error resulting from a minor

mistake or inadvertence, especially in writing or copying something on the record[.]”

(citation, quotation marks, and brackets omitted)). Further, the same “error” as to

the type of test designated occurs on both the original and amended Affidavits. And

 - 12 -
 COUICK V. JESSUP

 Opinion of the Court

without the correct designation of the test requested in box 9, box 14 cannot support

the claim of a willful refusal.

 Respondent also argues that the correct type of test, breath, was noted on the

attached DHHS Form 4081, “Rights of Person Requested to Submit to Chemical

Analysis to Determine Alcohol Concentration or Presence of an Impairing Substance

under N.C.G.S. 20-16.2(a)[.]” But Form 4081 was actually part of the Affidavit. Box

14 of the Affidavit states: “The driver willfully refused to submit to a chemical

analysis as indicated on the attached: [] DHHS 4082 [] DHHS 4081.”2 Both the

originally filed and amended DHHS 4081 forms were the same. At the top of the

attached form, three options are printed:

“[ ] Breath [ ] Blood [ ] Subsequent Test[.]”

“Breath” is checked as the test refused on both the original and amended forms. Thus,

on its face, the Affidavit showed that Deputy Griffin requested a blood test and

petitioner refused a breath test.

 But as noted, respondent also contends that the error was immaterial and does

not affect whether the Affidavit was properly executed to invoke the DMV’s authority.

We turn to the applicable version of North Carolina General Statute § 20-16.2 which

addresses the requirements for request for a chemical analysis. See generally N.C.

Gen. Stat. § 20-16.2. One requirement is that the officer or analyst “designate the

 2On both the original and amended affidavit both boxes are checked, but only one form, DHHS
4081 was attached.

 - 13 -
 COUICK V. JESSUP

 Opinion of the Court

type of test or tests to be given”:

 (c) Request to Submit to Chemical Analysis.
 -- A law enforcement officer or chemical analyst shall
 designate the type of test or tests to be given and may
 request the person charged to submit to the type of chemical
 analysis designated. If the person charged willfully refuses
 to submit to that chemical analysis, none may be given
 under the provisions of this section, but the refusal does not
 preclude testing under other applicable procedures of law.

N.C. Gen. Stat. § 20-16.2 (emphasis added). Box 9 of the Affidavit form is the portion

of the Affidavit where the officer designates the “type of test or tests to be given[.]”

Id. The statute requires the officer or analyst to “designate the type of test or tests

to be given” and the person charged must submit “to the type of chemical analysis

designated.” Id. (emphasis added). If the person refuses “to submit to that chemical

analysis” the officer could then designate another type of testing, but the type of test

designated and the type of test refused must be the same for the driver’s refusal to be

willful. See id. Thus, the type of chemical analysis requested and refused is an

essential element showing that the driver willfully refused testing and is a necessary

part of a properly executed affidavit. Id.

 Respondent’s reading of Lee as holding only four specific sections of the

Affidavit are relevant to invoke for jurisdiction is not entirely incorrect but focuses

only on the facts in the Lee case. See generally Lee, 365 N.C. 227, 717 S.E.2d 356. In

Lee, the officer requested and the driver refused a breath test, but the box regarding

willful refusal was not checked at all. See id. at 228, 717 S.E.2d at 357-58. Here, the

 - 14 -
 COUICK V. JESSUP

 Opinion of the Court

issue is whether petitioner willfully refused to take the type of test designated by

Deputy Griffin, and based upon both the original Affidavit and the amended

Affidavit, the officer “designated” one type of test – blood -- and petitioner refused

another type of test -- breath. Under North Carolina General Statute § 20-16.2, this

is not a willful refusal of a chemical analysis. See N.C. Gen. Stat. § 20-16.2.

 In Lee, the Supreme Court noted the “particularly disturbing” fact that the

affidavit as originally completed did not have the block for box 14 checked, but the

version of the affidavit presented at the hearing had an x mark in that block. Lee,

365 N.C. at 229-233, 717 S.E.2d at 358-61. The Court noted that DMV could have

corrected the problem but this correction would have to be done before revocation of

the license, not at the hearing, because DMV would have no jurisidiction either to

revoke the license or to hold a hearing without a properly executed affidavit:

 The DMV could have cured the deficiency in the affidavit
 by simply inquiring of the officer whether the affidavit
 contained an omission. If so, the DMV could have requested
 that the officer swear out a new, properly executed affidavit.
 Instead, the DMV took the position that the error described
 here was cured through a hearing the DMV lacked the
 authority to conduct. To countenance this interpretation
 would render meaningless the statutory requirement that
 the DMV receive an affidavit attesting to willful refusal
 before suspending driving privileges for that reason. The
 DMV’s interpretation would also permit suspension of
 driving privileges for willful refusal without an evidentiary
 predicate.

Id. at 234, 717 S.E.2d at 361 (emphasis added) (citations omitted).

 - 15 -
 COUICK V. JESSUP

 Opinion of the Court

 Here, on 14 November 2017, Deputy Griffin prepared the amended Affidavit

form, including the amended attached DHHS 4081 form, but the amended forms still

included the exact same information in Section 9 as the original forms. We assume

the only reason for the Amended Affidavit was to show that Deputy Griffin was the

law enforcement officer and the chemical analyst. Since the Affidavit still states that

Deputy Griffin designated one type of test and petitioner refused another type of test,

the refusal was not willful under North Carolina General Statute § 20-16.2. See

generally N.C. Gen. Stat. § 20-16.2.

 Respondent also argues that any deficiency in the Affidavit was corrected by

Deputy Griffin’s testimony at the hearing because Deputy Griffin testified that he

requested that respondent submit to a breath test and he refused. Deputy Griffin

also testified that respondent asked for a blood test but he did not offer a blood test

because “I have to go with my discretion” and “most of the time when I do a blood

draw it’s for . . . substances, illegal drugs and/or alcohol.” But as our Supreme Court

stressed in Lee, the error in the Affidavit cannot be “cured through a hearing the

DMV lacked the authority to conduct. To countenance this interpretation would

render meaningless the statutory requirement that the DMV receive an affidavit

attesting to willful refusal before suspending driving privileges for that reason.” Lee,

365 N.C. at 234, 717 S.E.2d at 361. The respondent’s argument ignores DMV’s

“limited authority” to suspend a driver’s license. Id. at 230, 717 S.E.2d at 359. As

 - 16 -
 COUICK V. JESSUP

 Opinion of the Court

the Supreme Court noted, “Absent prejudice, so the argument goes, a statutory

violation such as we have here may be overlooked. As we explain above, however,

this case involves the DMV’s authority to act. This is not a case that turns upon

prejudice to the petitioner.” Id. at 234, 717 S.E.2d at 361.

 III. Conclusion

 Because the Affidavit submitted to DMV did not show that petitioner had

willfully refused chemical analysis under North Carolina General Statute § 20-16.2,

it was not a “properly executed affidavit” which conferred jurisdiction upon DMV to

revoke petitioner’s license. We therefore affirm the trial court’s order.

 AFFIRMED.

 Judges BRYANT and COLLINS concur.

 - 17 -